PRICE, Judge.
This is an appeal from a judgment awarding to the insurer of the Bank of Dixie in Lake Providence the amount of damage caused to a drive-in-window drawer which was struck by a vehicle operated by defendant, Mrs. L. D. Chapman.
On August 31, 1973, Mrs. Chapman drove a borrowed pick-up truck to the drive-in-window of the Bank of Dixie to carry out a banking transaction. As she pulled up to the window, an extended mirror on the truck struck the service drawer causing extensive damage to this equipment. Aetna Casualty and Surety Company, as insurer of the Bank, paid the cost of repairs amounting to $1,150.66 and was awarded judgment for this amount against defendant.
On this appeal by Mrs. Chapman, she assigns error to the trial court in finding that she was at fault in causing the damage as she contends the manner in which the drawer was operated by the bank teller in the narrow drive way constitued a trap without appropriate warning to unsuspecting customers. Defendant also urges the doctrine of assumption of the risk by the Bank on the allegation that it had knowledge of prior instances of customers having struck the service drawer and had not taken proper steps to protect it from harm.
*752 Defendant further contends that in the event she is found liable for the damage, the amount awarded is excessive as the replacement cost of the entire unit was not an appropriate measure of damages.
The testimony of defendant is conflicting with that of the Bank teller as to whether the service drawer was fully extended at the time defendant drove into it. Defendant testified on trial that the drawer was extended by the teller just as she was pulling abreast of the window which caused her to misjudge the clearance of her vehicle. The teller disputed this version and contends the drawer was never retracted after the previous vehicle departed as the incident happened during the peak period of business on a Friday afternoon. The teller also testified this procedure was followed frequently during rush periods as drive-in patrons pull up immediately behind the preceding customer without the teller having time to retract and re-extend the drawer.
As the answer filed by defendant alleged the drawer was fully extended as she approached it which is contradictory to her testimony on trial, we accept the teller’s version as being correct.
A review of all the evidence convinces us the cause of the accident and resulting damage was the lack of the exercise of proper driving skill by the defendant rather than the maintenance of a trap by the Bank.
The evidence shows defendant was a regular customer who was familar with the method of operation of the drive-in service window and the width of the driveway accommodating vehicles using it.
Defendant admits this was the first time she had driven this pick-up truck with the large side view mirrors. We have found the service drawer was fully extended and in full view at the time defendant proceeded to drive abreast of it. Therefore, had defendant exercised the degree of skill required of a reasonably prudent driver, under the circumstances she would have avoided striking the drawer. The fact that the vehicle she was driving was equipped with protruding mirrors increased the degree of skill required of her commensurate with this known hazard.
We do not find the evidence to show the Bank had assumed the risk of harm to the drive-in-window equipment because of prior known instances of customers colliding with the drawer. There was proof of only one other such instance in the history of the operation of this facility. No damage occurred in that incident.
The trial court awarded the insurer the full replacement cost of the complex service drawer. The sole evidence in the record on this issue is the testimony of Edward Parker, the district manager of Die-bold Incorporated, a specialist in installation and repair of bank equipment from Jackson, Mississippi. He testified the drawer was bent and warped to such an extent it could not be repaired and it was necessary to replace the entire unit. There is no salvage value of this type equipment. Therefore, the trial judge awarded the costs of the new unit plus labor amounting to $1,150.66.
The proper measure of damages where property has been destroyed beyond repair is replacement cost less depreciation, when there is no evidence as to the value of the property prior to and after the damage. Granger v. Bouillon, 220 So.2d 764 (La.App. 1st Cir. 1969); Gullat v. Ashland Oil and Refining Company, 243 So.2d 820 (La.App. 2nd Cir. 1971).
There was no testimony at the trial in regard to the approximate age of the particular bank drawer. Parker testified his company had a maintenance contract with the Bank of Dixie. He estimated the normal life of a service drawer to be approximately ten years, which period can be extended to fifteen or more years by proper maintenance under a service contract.
*753 As there is no evidence in the record as to the age of the service drawer, we are unable to determine the amount of depreciation to be deducted from replacement cost of $1,150.66. Therefore we remand this case to the district court for the taking of evidence in this regard and for a determination of the appropriate amount of damages to which plaintiff is entitled consistent with the views expressed herein.
The costs of this appeal are taxed equally to plaintiff and defendant.